UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL ROBLEDO,<br><br>Defendant. | Case No.: 18CR2190-AJB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO MODIFY SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)**<br>(**Doc. 67**) |
|---|---|

Introduction

Defendant Raul Robledo has filed a motion asking this Court to modify his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his release to home confinement, relying in part on the threat posed by the COVID-19 pandemic. The United States opposes the motion. This Court denies the motion with prejudice in that Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute.

Factual Background

On April 15, 2019, Defendant was convicted of one count of importation of methamphetamine, one count of importation of heroin, and one count of importation of cocaine, all in violation of 21 U.S.C. § 952 & 960. This Court sentenced him to 27 months of imprisonment per count to run concurrently, to be followed by three years'

supervised release. Defendant has served approximately 11 ½ months of that sentence. He now moves under 18 U.S.C. § 3582(c)(1)(A)(i) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP) to home confinement, relying on the threat posed by the COVID-19 pandemic and that he is in a high-risk group medically.

II.   Defendant's Conviction and Request for a Sentence Reduction

   A.   Offense Conduct and Sentencing

On April 5, 2018, Defendant applied for entry into the United States from Mexico at the Otay Mesa, California Port of Entry. Exh. 9, Presentence Report (PSR) ¶ 5 (filed under seal). Defendant was referred to secondary inspection. Id.

A total of 52 packages were found concealed within Defendant's vehicle. Exh. 9, PSR ¶ 7. After an analysis was performed on the contents of the packages, they were found to contain 23.44 kilograms of actual methamphetamine, 2.99 kilograms of cocaine, 1.99 kilograms of heroin, and 486 grams of fentanyl. Exh. 9, PSR ¶ 8. While at the time of arrest Defendant denied knowledge of the narcotics in his vehicle, he later admitted to knowingly importing the drugs. Exh. 9, PSR ¶ 17.

According to the PSR, Defendant enjoyed a close relationship with his family, which included his parents (who live in Mexico) and his sister (who lives in the United States). Exh. 9, PSR ¶ 56-57. Defendant also has two minor children. Exh. 9, PSR ¶ 58.

As far as release plans, at that time Defendant indicated that he intended to live in San Diego and work for his cousin, Priscilla, who was opening her own vehicle registration business. Exh. 9, PSR ¶ 64. At the time of the offense, Defendant had owned his own vehicle registration business. Exh. 9, PSR ¶ 74.

On April 15, 2019, this Court presided over Defendant's sentencing. Exh. 4, Docket Report. U.S. Probation recommended a sentence of 36 months' custody. Exh. 9, PSR 109-114, 117. The United States recommended 46 months' custody, after consideration of the 18 U.S.C. § 3553(a) factors. The Court sentenced Defendant to 27

months' custody. Exh. 4, Docket Report. The Court also granted Defendant's self-surrender request and he was ordered to surrender on May 20, 2019.

B.  Defendant's Time in BOP Custody

On May 20, 2019, Defendant reported to the BOP facility at Taft FCI. Unrelated to the COVID-19 emergency, Defendant is being transferred to a new BOP facility. Currently, he is at FCI Mendota. Exh. 6, Inmate Profile (filed under seal). Per BOP records, he most likely will be transferred FCI Herlong for permanent placement. Exh. 6, Inmate Profile.

While in custody, it does not appear that Defendant has been disciplined. Exh. 7, Inmate Discipline Report (filed under seal). Per Defendant's Inmate Profile, he is classified at minimum security level. Exh. 6. He is also at a minimum risk for recidivism. *Id*.

C.  Defendant's Health and Medical Issues

The PSR noted that Defendant had been in a motorcycle accident in 2017 which led to a broken wrist and clavicle. Exh. 9, PSR ¶ 65. Both were repaired with surgery. *Id*. No other physical or medical issues were noted. No substance abuse issues were reported.

While in the care of the BOP, Defendant has been designated as care level 1, which is the lowest level for needing care or treatment. Exh. 6, Inmate Profile. He has no medical restrictions and thus can perform regular duties.

A review of Defendant's BOP medical records indicate Defendant denied any history of conditions including respiratory or other conditions placing him at greater risk of serious illness as a result of COVID-19. Exh. 8, Medical Records (filed under seal). There is no report or record of a report of use of tobacco products. When Defendant was received at FCI Mendota, he was given an immediate medical screening, which showed no acute cardiopulmonary disease and a scan showed his lungs were clear. Id. Since approximately April 20, 2020, defendant has been listed as an asymptomatic inmate subject to quarantine. *Id.*

D.      Defendant's Request for Compassionate Release and Taft Response

According to Defendant's motion, he sent a request to the Warden at Taft FCI. Def. Mot. at 29. In the request, Defendant referred to the Attorney General's April 3, 2020 memorandum and requested home confinement based on "extraordinary and compelling reasons" given the COVID-19 pandemic. He claimed he was at greater risk of illness due to conditions at Taft FCI and given he would be transferred to a new facility. Id. at 30. In a document titled, "Release Plan," which was also attached to Defendant's Motion, defendant claimed he had a job lined up. Id. at 31. He also included additional information about where he would be residing and who would be providing for him financially. It does not appear that the will be living with family members, but instead will be living with someone not previously mentioned in the PSR.

On April 6, 2020, the grievance coordinator at FCI Taft issued a blanket memorandum, advising inmates that they would need to make their requests to their new BOP facility given their impending transfers from FCI Taft. Exh. 3, Patrick Dec. Shortly thereafter, however, FCI Taft subsequently received guidance from BOP and then removed the blanket memorandum. *Id*. Per BOP guidance, Taft began considering inmates for home confinement in the following order: elderly inmates who are potentially medically compromised; non-elderly inmates who are potentially medically compromised; and, the remaining inmates. *Id*.

On April 10, 2020, Defendant filed what appeared to be a boilerplate motion with this Court seeking a sentence reduction for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He claims that his "age and medical condition" make him at a higher risk of death or serious illness in prison given the COVID-19 emergency and thus warrant "extraordinary and compelling reasons" for his release. Def. Mot. at 2, 4. Notably, he does not provide further specifics about his age and medical conditions in his motion. *Id.* However, in his request to the Warden at FCI Taft, he said he was a 35-year-old male with a 10-year history of smoking tobacco products and concludes these conditions make him more susceptible to death from COVID-19. Def. Mot. at 30. Moreover, he asserts he

should be considered for home confinement under current BOP guidance given his confinement constitutes cruel and unusual punishment under the Eighth Amendment in light of the COVID-19 emergency.

Government Counsel has been in frequent communication local counsel for BOP. A BOP representative from FCI Mendota, Defendant's current facility, has represented that Defendant appears to meet the criteria for a home confinement referral, but that referral process will take a few weeks. (Doc.68) The representative also searched a BOP database and could not find a record of any request for review for home confinement submitted by Defendant either at Taft CI or FCI Mendota. Finally, the representative indicated that as of April 27, 2020, there are no known or suspected cases of COVID-19 at FCI Mendota. (*Id.*)

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to modify his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. The United States does not challenge whether Defendant exhausted his administrative rights, as noted in their opposition.

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United

*States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I)   suffering from a serious physical or medical condition,
> (II)  suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf. 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## Discussion

This Court denies Defendant's motion for a reduction in his sentence based on the merits and with prejudice.[2] This denial is based on two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction. Second, Defendant has not met his burden to show that a reduction is warranted in light of the relevant § 3553(a) factors. Additionally, defendant does not have a legally cognizable claim to request judicial review of any request for home confinement under current BOP guidance.

I. The Court Denies the Motion Because Defendant Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction

Even if this Court had authority to grant Defendant's motion for a reduction of his sentence, it should be denied for two reasons. First, Defendant has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement. Second, the statutory sentencing factors do no weigh in favor of his release.

A. Defendant has not identified "Extraordinary and Compelling Reasons" for a sentence reduction

Defendant's request for a sentence reduction is denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. Under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that

---

[2] While no record of Defendant's request for home confinement was found in the BOP database, based on FCI Taft's issuance of a blanket memorandum regarding home confinement requests, the United States does not contend that defendant failed to exhaust his administrative remedies for purposes of responding to this motion.

"such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

While no record of Defendant's request for home confinement was found in the BOP database, based on FCI Taft's issuance of a blanket memorandum regarding home confinement requests, the United States does not contend that defendant failed to exhaust his administrative remedies for purposes of responding to this motion.

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 2020 WL 1647922 at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020); see also *United States v. Eberhart,* 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by §

3582(c)(1)(A)."). ³ To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world- wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID- 19,⁴ that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court

---

³ See also, e.g., United States v. Coles, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); United States v. Okpala, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); United States v. Weeks, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); United States v. Haney, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); United States v. Pinto-Thomaz, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); United States v. Korn, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); United States v. Carver, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

⁴ See Centers for Disease Control, At Risk for Severe Illness, available athttps://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020)

should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

In this case, Defendant has asserted that he because he is a 35-year-old male who has been smoking tobacco products for 10 years, he is therefore more vulnerable to becoming seriously ill should he contract COVID-19. For the following reasons, that contention does not establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and so Defendant's motion cannot be granted.

First, Defendant has not provided sufficient documentation for his asserted medical conditions and therefore cannot meet his burden to establish his entitlement to a sentence reduction on that ground alone. For example, he claims he has "documentable underlying medical conditions" as a 35-year-old smoker of cigarettes. Def. Mot. at 31. However, his medical records do not show any documented use of tobacco products. Exh. 8, Medical Records. He has no known respiratory issues; in fact, he recently was evaluated shortly before the filing of this response and his lungs were clear. Id. Overall, his medical records show that Defendant is a healthy 35-year-old with no serious health or medical issues. Id.

Second, Defendant has not identified a medical condition that falls within one of the categories specified in the policy statement's application note. Defendant's asserted condition does not itself rise to the level of severity required under the policy statement. He does not have any known terminal illness, or any serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Furthermore, even taking Defendant's condition as a 10-year smoker as true, Defendant's condition is not one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19. See note 6.

Third, Defendant has not established that the risk of him contracting an infection is higher in the BOP facility where he is staying then if he were released. Notably,

Defendant made claims related to the anticipated closure of FCI Taft. However, since then, he has been transferred to a new facility – FCI Mendota. As of the date of the filing of this response, there has been no known cases of COVID-19 at FCI Taft or FCI Mendota. https://www.bop.gov/coronavirus.

For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). The motion should be denied.

B.  The § 3553(A) Factors Strongly Weigh Against His Release

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).  Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its  analysis. See § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

The § 3553(a) factors strongly disfavor a sentence reduction.  Defendant was convicted and sentenced to 27 months' custody due to possession of significant quantities of methamphetamine, heroin, and cocaine in his car. While he was a first-time offender, this criminal conduct is serious and showed a blatant disregard for the health and safety of others as well as for the law. He only has served approximately 42% of his sentence – a sentence in which the Court already had varied downward 19 months.

Moreover, Defendant's claim that he may be released into a stable environment is likely illusory. Per the PSR, defendant's family consisted of parents that live in Mexico and a sister who lives in the United States, who claimed to have a close relationship with the defendant. Exh. 9, PSR ¶¶ 56-57. He further claimed he planned to work with his cousin, Priscilla. Id. at ¶ 64. Now, he claims he will live with a friend (who was not mentioned at all in the PSR) and that he will work for someone named Nathalia Lopez (also not mentioned in the PSR). Def. Mot. At 31.

BOP is in the best position to determine if Defendant should be subject to home confinement. As previously indicated, once Defendant is settled in his new facility, he

will be subject to consideration but in the order of priority. Permitting BOP to make the assessment would present a far more narrowly tailored alternative to address the potential COVID-19 threat than reducing Defendant's duly imposed criminal sentence. And if BOP ultimately concludes that home confinement is inappropriate, that will reflect BOP's expert judgment that it is not in the public interest to release Defendant at this time in light of Defendant's record and individual circumstances.

II.     Defendant Cannot Seek Judicial Review of BOP's Discretionary Decision to Grant or Deny Home Confinement

Defendant additionally seeks the imposition of home confinement based on recent BOP guidance. As indicated, Defendant will be considered for home confinement once he is settled in his new facility subject to its priority considerations. As discussed below, however, the decision to grant or deny home confinement is within the discretion of BOP and not subject to judicial review.

Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); see also *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Because the defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. See *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976)

("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

Following the imposition of sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. See § 3582(c). But Defendant's request to serve the rest of his term in home confinement, as opposed to prison, provides no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. Defendant's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because Defendant offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request for such relief in this forum.[5]

## Conclusion

For these reasons, this Court denies Defendant's motion for a sentence reduction on the merits and with prejudice.

Dated: May 19, 2020

Hon. Anthony J. Battaglia
United States District Judge

---

[5] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; see 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement consistent with USSG § 5F1.2. See § 3583(e)(2).